COPY

Dana B. Taschner (SBN 135494)
DANA B. TASCHNER
Lee A. Cirsch (SBN 227668)
THE LANIER LAW FIRM
2049 Century Park East, Suite 1940
Los Angeles, CA 90067
Phone: (310) 277-5100
Fax:  (310) 277-5103
dana@danataschner.com
lec@lanierlawfirm.com

Attorneys for Plaintiff
JAMES THOMPSON

BY: _____

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

11 APR 25  PM 12: 47

FILED

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

JAMES THOMPSON, an individual,

Plaintiff,

vs.

DEPUY ORTHOPAEDICS, INC., an Indiana Corporation; JOHNSON & JOHNSON SERVICES, INC., a New Jersey Corporation; THOMAS SCHMALZRIED M.D., A Professional Corp., a California Corporation; and DOES 1-10 , inclusive,

Defendants.

Case No. **CV11  03513  MMM  (FFMx)**

**COMPLAINT FOR DAMAGES:**

1) **NEGLIGENCE;**
2) **STRICT PRODUCTS LIABILITY MANUFACTURING DEFECT);**
3) **STRICT PRODUCTS LIABILITY (DESIGN DEFECT);**
4) **STRICT PRODUCTS LIABILITY (INADEQUATE WARNING);**
5) **STRICT PRODUCTS LIABILITY (FAILURE TO CONFORM TO REPRESENTATIONS);**
6) **STRICT PRODUCTS LIABILITY (FAILURE TO ADEQUATELY TEST);**
7) **BREACH OF EXPRESS WARRANTY;**
8) **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;**
9) **FRAUDULENT CONCEALMENT;**
10) **INTENTIONAL MISREPRESENTATION;**
11) **NEGLIGENT MISREPRESENTATION; AND**
12) **VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.**

**DEMAND FOR JURY TRIAL**

**Complaint for Damages**

- 1 -

Plaintiff JAMES THOMPSON ("Plaintiff"), alleges on information and belief against DEPUY ORTHOРAEDICS, INC., and JOHNSON & JOHNSON SERVICES, INC., THOMAS SCHMALZRIED M.D., A Professional Corp., a California Corporation, and DOES 1-100, INCLUSIVE, ("Defendants"), the following:

## I.

## INTRODUCTION AND SUMMARY OF ACTION

1.     Defendants manufactured the Pinnacle Hip Implant Device ("Pinnacle Device"). DePuy launched the Pinnacle Acetabular Cup System in 2001. The Pinnacle Device was designed, developed, and sold for human hip joints damaged or diseased due to fracture, osteoarthritis, rheumatoid arthritis, and avascular necrosis. The Pinnacle Device is designed to be fastened to human bone with surgical screws. The Pinnacle Device was designed and sold to provide pain relief and consistent and smooth range of motion. Defendants marketed the Pinnacle Devices as having significant advantages over other hip devices and hip replacement systems. Defendants marketed and described the Pinnacle Device as "[u]niquely designed to meet the demands of active patients like you –and help reduce pain" and advertised it with pictures of a young woman trying on sneakers in an athletic shoe store. Defendants advertised the Pinnacle Device as superior devices featuring TrueGlide technology, allowing the body to create a thin film of lubrication between surfaces, which enables "a more fluid range of natural motion."

2.     Defendants also advertised and sold the Pinnacle Device as the best surgical option that "[r]ecreates the natural ball-and-socket joint of your hip, increasing stability and range of motion."

3.     On information and belief Plaintiff alleges that Defendants sold approximately 150,000 Pinnacle Devices. Defendants have stated in promotional materials that "99.9% of Pinnacle Hip components are still in use today."

4.     On information and belief, Plaintiffs allege that over 1,300 adverse reports have been submitted to the U.S. Food and Drug Administration (FDA) regarding failures or complications of the Pinnacle Devices.

5.     On information and belief, Plaintiff alleges that Defendants are aware that Pinnacle Devices may result in metallosis, biologic toxicity, and high failure rate. Plaintiffs further allege that the Pinnacle Devices result in unsafe release of toxic metal ions into hip implant recipients' tissue and bloodstream. Plaintiffs further allege that Defendants are aware that metal particles from Pinnacle Devices results in metallosis, tissue death, bone erosion, and development of tumors.

6.     On information and belief, Plaintiff alleges that particulate debris from the Pinnacle Devices causes severe inflammation, severe pain, tissue and bone loss, and other related diseases.

7.     Plaintiff further alleges that defendants are aware that certain Pinnacle Device recipients have elevated cobalt and chromium levels greatly exceeding acceptable safety standards.

## II.

## PARTIES

8.     Plaintiff JAMES THOMPSON is, and at all times relevant to this Complaint was, a resident of the city of Litchfield Park, located in the county of Maricopa, in the state of Arizona.

9.     Defendant DEPUY ORTHOPAEDICS, INC. is, and at all times relevant to this Complaint was, an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.  Defendant DEPUY ORTHOPAEDICS, INC. is and was at all times relevant herein doing business in

and/or having directed its activities at California, and specifically this judicial district.

10.    Defendant JOHNSON & JOHNSON SERVICES, INC. is, and at all times relevant to this Complaint was, a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant JOHNSON & JOHNSON SERVICES, INC. is and was at all times relevant herein doing business in and/or having directed its activities at California, and specifically this judicial district.

11.    Defendant THOMAS P. SCHMALZRIED, M.D., A Professional Corporation is a California corporation with its primary place of business at 2200 W. 3rd St., Suite 400, Los Angeles, California 90057.

12.    Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1-100, inclusive, or any of them, and therefore sues these Defendants, and each of them, by such fictitious names. Plaintiffs will seek leave of this Court to amend this complaint when the status and identities of these Defendants are ascertained.

13.    At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of its agency and was subject to and under the supervision of its co-defendants.

## III.
## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c). A substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## IV.
## FACTUAL ALLEGATIONS

### A.     The Pinnacle Device With An "Ultamet" Liner

16.     The Pinnacle Device was developed for the purpose of reconstructing diseased human hip joints from conditions such as osteoarthritis, rheumatoid arthritis, avascular necrosis (AVN), fracture, and other degenerative conditions. The hip joint connects the thigh (femur) bone of a patient's leg to the patient's pelvis. The hip joint is like a ball that fits in a socket. The socket portion of the hip is called the acetabulum. The femoral head at the top of the femur bone rotates within the curved surface of the acetabulum.

17.     The Pinnacle Device is made up of four components: the metal femoral stem is inserted inside the femur bone, the metal femoral head (or ball) connects to the top of the stem and then makes contact with a liner that is attached to the interior portion of the metal acetabulum cup (socket). The acetabulum cup is comprised of titanium metal on its outer shell. Either a plastic, ceramic, or cobalt-chromium metal liner is then placed on the inside of the acetabulum cup. The metal femoral head rotates within the plastic, ceramic, or metal liner, depending on which liner the surgeon selects based on the patient's needs. The cobalt-chromium metal liner is branded by Defendants as the "Ultamet." The Pinnacle Device with an Ultamet liner is a "metal-on-metal" device due to the fact that both articulating surfaces – the femoral head (ball) and acetabulum liner (socket) – are comprised of cobalt-chromium metal.

**Complaint for Damages**

**B.  Defendants Do Not Seek Premarket Approval From The FDA, And Thus The FDA Makes No Finding That The Pinnacle Device Is Safe Or Effective**

18.   The Pinnacle Device is a Class III medical device.  Class III devices are those that operate to sustain human life, are of substantial importance in preventing impairment of human health, or pose potentially unreasonable risks to patients.

19.   The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938 ("MDA"), in theory, require Class III medical devices, including the Pinnacle Device, to undergo premarket approval by the FDA, a process which obligates the manufacturer to design and implement a clinical investigation and to submit the results of that investigation to the FDA.

20.   Premarket approval is a rigorous process that requires a manufacturer to submit what is typically a multivolume application that includes, among other things, full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling.

21.   The FDA may grant premarket approval only if it finds that there is reasonable assurance that the medical device is safe and effective and must weigh any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

22.   A medical device on the market prior to the effective date of the MDA – a so-called "grandfathered" device – was not required to undergo premarket approval.  In addition, a medical device marketed after the MDA's

**Complaint for Damages**

- 6 -

effective date may bypass the rigorous premarket approval process if the device is "substantially equivalent" to a "grandfathered" pre-MDA device (i.e., a device approved prior to May 28, 1976). This exception to premarket approval is known as the "510(k)" process and simply requires the manufacturer to notify the FDA under section 510(k) of the MDA of its intent to market a device at least 90 days prior to the device's introduction on the market, and to explain the device's substantial equivalence to a pre-MDA predicate device. The FDA may then approve the new device for sale in the United States.

23.    Rather than being approved for use by the FDA pursuant to the rigorous premarket approval process, the Pinnacle Device metal-on-metal total hip replacement system was certified to be sold on the basis of Defendants' claim that, under section 510(k) of the MDA, it was "substantially equivalent" to another older metal-on-metal hip implant device that Defendants sold and implanted prior to the enactment of the MDA in 1976.

24.    As such, under the 510(k) process, Defendants were able to market the Pinnacle Device with virtually no clinical or non-clinical trials or FDA review of the implant for safety and effectiveness.

**C.    Defendants Took No Steps To Test The Pinnacle Device Or They Would Have Discovered That It Leads To Metallosis And Other Complications Before Releasing It On The Market**

25.    Had Defendants conducted clinical trials of the Pinnacle Device before it was first released on the market in the early 2000's, they would have discovered at that time what they ultimately learned in and around 2007 – that the Pinnacle Device results in a high percentage of patients developing metallosis, biologic toxicity and an early and high failure rate due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium metal formal head rotates within the cobalt-chromium metal acetabular liner.

26.    In other words, implantation of the Pinnacle Device results in the
nearly immediate systemic release of high levels of toxic metal cobalt-chromium
ions into every hip implant patient's tissue and bloodstream.  This is because
cobalt-chromium metal particles are released by friction from the metal femoral
head rotating within the metal liner.  The particles than accumulate in the patient's
tissue surrounding the implant giving rise to metallosis, pseudotumors, or other
conditions.

27.    The formation of metallosis, pseudotumors, and infection and
inflammation causes severe pain and discomfort, death of surrounding tissue and
bone loss, and a lack of mobility.

28.    The problems with the Pinnacle Device are similar to the issues that
gave rise to Defendants' recall of the ASR XL Acetabular System.  Like the
Pinnacle Device, the ASR is also prone to early failure, and causes metallosis and
cobalt toxicity resulting in serious health problems and the need for subsequent
revision surgery.  As a result, in August 2010, Defendants, in acknowledging the
high failure rate of the ASR, recalled more than 93,000 ASRs worldwide.  It is
anticipated that Defendants will at some point recall Pinnacle Devices for the
same reasons.

29.    On information and belief, Plaintiff alleges that the FDA has received
more than 1,300 adverse reports regarding problems associated with or attributed
to the Pinnacle Device.

30.    On information and belief, Plaintiff alleges that many recipients of
the Pinnacle Device are suffering from elevated levels of chromium and cobalt.
Plaintiff further alleges on information and belief that Defendants are aware that
certain recipients of the Pinnacle Device have significantly elevated levels of
chromium and cobalt in amounts many times higher than acceptable or
recommended safety levels.  Notably, the ASR XL Acetabular System and the
Pinnacle Device were designed by Defendant Thomas Schmalzried.

**Complaint for Damages**

31.     A number of governmental regulatory agencies have recognized the problems that are caused by metal-on-metal implants such as the ASR and Pinnacle Device.  For instance, The Medicines and Healthcare Products Regulatory Agency ("MHRA") in Britain investigated Defendants' metal-on-metal total hip replacement system after receiving widespread reports of soft tissue reactions and tumor growth in thousands of patients who had received these implants.  MHRA has required physicians to establish a system to closely monitor patients known to have metal-on-metal hips by monitoring the cobalt and chromium ion levels in their blood and to evaluate them for related soft tissue reactions.

32.     Similarly, the Alaska Department of Health recently issued a bulletin warning of the toxicity of Defendants' metal-on-metal total hip replacement systems.  The State of Alaska, like the MHRA, identified the need for close medical monitoring, surveillance and treatment of all patients who had received these and similar metal-on-metal implants.

33.     Despite the public knowledge to the contrary, Defendants' continue to misrepresent the Pinnacle Device as a high-quality, safe and effective hip replacement product in their marketing and promotional materials.  This is despite the fact that Defendants have known for years that the Pinnacle Device poses a danger to patients that have it implanted.

34.     As a result, Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among other complications.  These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in life-long health problems caused by the defective device.

**D.** **Plaintiff Was Implanted With A Pinnacle Device And As A Result Has Suffered Injuries**

35.    On or about April 27, 2009, Plaintiff underwent a left total hip arthroplasty procedure.  A Pinnacle Device with an Ultamet liner was implanted in place of his left hip.  Over time the known and common problem of natural biologic corrosion and friction wear caused large amounts of toxic cobalt-chromium metal ions and particles to be released into Plaintiff's blood and tissue and bone surrounding  the implant.

36.    Since the implantation of the Pinnacle Device, Plaintiff has experienced severe pain and discomfort and inflammation in his left thigh, left hip area, and groin.  He also feels stiffness in the left hip-joint with a pinching sensation radiating from the left hip-joint.

37.    All of the injuries and complications suffered by Plaintiff were caused by the defective design, warnings, construction and unreasonably dangerous character of the Pinnacle Device that was implanted in him.  Had Defendants not concealed the known defects, the early failure rate, the known complications and the unreasonable risks associated with the use of the Pinnacle Device, Plaintiff would not have consented to the Pinnacle Device being used in his total hip arthroplasty.

38.    Plaintiff was unaware of any causal link between the injuries he has suffered and any wrongdoing on the part of Defendants due to the faulty and defective nature of the Pinnacle Device, due in part to the failures of Defendants to properly warn him and his physicians about the Pinnacle Device's defective and faulty nature.  In and around late fall of 2010, Plaintiff first became aware of said causal link when he became aware of the recall of the ASR from lawyer advertisements on television and realized that the issues he was having with his Pinnacle Device that were eerily similar to that which was being reported regarding the ASR.  Plaintiff was unable to make an earlier discovery of said

causal link despite reasonable diligence because of Defendants' failure to properly warn him and his physicians about the Pinnacle Device's defective and faulty nature, and their failure to issue any recall or take any other proactive action to date with respect to the injuries being caused to patients that have been implanted with a Pinnacle Device.

## V.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

39.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

40.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

41.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into interstate commerce in that Defendants knew or should have known that those individuals that had the device surgically implanted were at risk for suffering harmful effects from it including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery

to replace the device with the attendant risks of complications and death from such further surgery.

42.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a. Negligently designing the Pinnacle Device in a manner which was dangerous to those individuals who had the device surgically implanted;

b. Designing, manufacturing, producing, creating, and/or promoting the Pinnacle Device without adequately, sufficiently, or thoroughly testing it;

c. Not conducting sufficient testing programs to determine whether or not the aforesaid Pinnacle Device was safe for use;

d. Defendants herein knew or should have known that Pinnacle Device was unsafe and unfit for use by reason of the dangers to its users;

e. Selling the Pinnacle Device without making proper and sufficient tests to determine the dangers to its users;

f. Negligently failing to adequately and correctly warn Plaintiff or his physicians, hospitals and/or healthcare providers of the dangers of Pinnacle Device;

g. Negligently failing to recall their dangerous and defective Pinnacle Device at the earliest date that it became known that the device was, in fact, dangerous and defective;

h. Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the Pinnacle Device into their patients;

i. Negligently advertising and recommending the use of the Pinnacle Device despite the fact that Defendants knew or should have known of its dangerous propensities;

**Complaint for Damages**

j. Negligently representing that the Pinnacle Device offered was safe for use for its intended purpose, when, in fact, it was unsafe;

k. Negligently representing that the Pinnacle Device offered low wear and high stability, when, in fact, the opposite was true;

l. Negligently manufacturing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

m. Negligently producing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

n. Negligently assembling the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

o. Defendants under-reported, underestimated and downplayed the serious danger of the Pinnacle Device.

43.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Pinnacle Device in that they:

a. Failed to use due care in designing and manufacturing the Pinnacle Device so as to avoid the aforementioned risks to individuals that had the devices surgically implanted;

b. Failed to accompany their product with proper warnings;

c. Failed to accompany their product with proper instructions for use;

d. Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Pinnacle Device; and

e. Were otherwise careless and/or negligent.

44.    Despite the fact that Defendants knew or should have known that the Pinnacle Device caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Pinnacle Device.

**Complaint for Damages**

- 13 -

45.    Defendants knew or should have known that consumers such as the Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

46.    Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

47.    By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

48.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

49.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT)
### (Against All Defendants)

50.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

51.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

52.    The Pinnacle Device that were surgically implanted in Plaintiff was defective in their manufacture when they left the hands of Defendants in that they deviated from product specifications, posing a serious risk that they could fail early in patients therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

53.    As a direct and proximate result of Defendants' placement of the defective Pinnacle Devices into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

54.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

55.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
### (Against All Defendants)

56. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

57. At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Pinnacle Device as hereinabove described that was surgically implanted in the Plaintiff.

58. At all times herein mentioned, the Pinnacle Device designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users such as Plaintiff that had the device surgically implanted.

59. At all times herein mentioned, the Pinnacle Device designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

60. At all times herein mentioned, the Pinnacle Device was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

61. At all times herein mentioned, the Pinnacle Device's unsafe, defective, and inherently dangerous condition was a cause of injury to Plaintiff.

62. At all times herein mentioned, the Pinnacle Device failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

63. Plaintiffs' injuries resulted from use of the Pinnacle Device that was both intended and reasonably foreseeable by Defendants.

**Complaint for Damages**

64.    At all times herein mentioned, the Pinnacle Device posed a risk of danger inherent in the design which outweighed the benefits of that design.

65.    At all times herein mentioned, the Pinnacle Device was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

66.    Defendants knew, or should have known, that at all times herein mentioned that the Pinnacle Device was in a defective condition, and was and is inherently dangerous and unsafe.

67.    At the time of the implantation of the Pinnacle Device into the Plaintiff, the aforesaid product was being used for the purposes and in a manner normally intended, namely for use as a hip replacement device.

68.    Defendants, with this knowledge, voluntarily designed their Pinnacle Device in a dangerous condition for use by the public and, in particular, the Plaintiff.

69.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

70.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff, in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

71.    As a direct and proximate result of Defendants' placement of the defective Pinnacle Devices into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a

revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

72.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

73.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (INADEQUATE WARNING)
### (Against All Defendants)

74.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

75.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

76.    The Pinnacle Devices placed into the stream of commerce by Defendants were defective due to inadequate warning, because Defendants knew or should have known that the Pinnacle Devices could fail early in patients therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks.  Further, the Pinnacle Devices placed into the stream of commerce by Defendants were surgically implanted in a manner reasonably anticipated by Defendants.

77.    As a direct and proximate result of Defendants' placement of the defective Pinnacle Devices into the stream of commerce, Plaintiff experienced

and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

78.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

79.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (FAILURE TO CONFORM TO REPRESENTATIONS)
### (Against All Defendants)

80.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

81.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

82.    Defendants made representations to consumers regarding the character or quality of Pinnacle Devices, including but not limited to statements that the Pinnacle Devices were a safe and effective hip replacement systems.  For example, Defendants claimed that the device was based on a "strong clinical history", and that the devices would allow patients to "return to their more active lifestyles." Defendants also advertised that the Hip Implant Device is "[d]esigned

for active lifestyles." They further asserted that the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology. Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability." They further touted that "[w]ith DePuy Advanced Bearing options, you can help your patients never stop moving." Defendants also indicated that "[l]arge diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery."

83.    The Pinnacle Devices placed into the stream of commerce by the Defendants were defective in that, when they left the hands of the Defendants, they did not conform to Defendants' representations.

84.    Plaintiff justifiably relied upon Defendants' representations regarding the Pinnacle Devices.

85.    As a direct and proximate result of Defendants' placement of the defective Pinnacle Devices into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

86.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

87.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY (FAILURE TO ADEQUATELY TEST)

### (Against All Defendants)

88.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

89.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

90.    Defendants advised consumers that the Pinnacle Devices were safe and effective hip replacement devices.  Defendants failed to adequately test the Pinnacle Devices to ensure that they would not fail early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

91.    Had Defendants adequately tested the Pinnacle Devices and disclosed the results of those tests to the public, Plaintiff would not have elected to have the Pinnacle Devices surgically implanted.

92.    As a direct and proximate result of Defendants' placement of the defective Pinnacle Devices into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

93.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

94.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (Against All Defendants)

95.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

96.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

97.    Defendants expressly warranted that the Pinnacle Devices were safe and effective hip replacement systems.

98.    The Pinnacle Devices placed into the stream of commerce by Defendants did not conform to these express representations because they failed early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

99.    As a direct and proximate result of Defendants' breach of express warranties regarding the safety and effectiveness of the Pinnacle Devices, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

100.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive damages.

## EIGHTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Against All Defendants)

101.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

102.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices.

103.    At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Devices, Defendants knew the use for which the Pinnacle Devices were intended, and impliedly warranted the Pinnacle Devices to be of merchantable quality and safe for such use.

104.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Pinnacle Devices was of merchantable quality and safe for its intended use.

105.    Contrary to Defendants' implied warranties, the Pinnacle Devices was not of merchantable quality or safe for its intended use, because the Pinnacle Devices were unreasonably dangerous as described above.

106.    As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the Pinnacle Devices, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

107.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## NINTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

### (Against All Defendants)

108.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

109.   Defendants had a duty to inform Plaintiff of all material facts about the Pinnacle Devices based upon their assumption of that responsibility by representing to consumers that the Pinnacle Devices were safe and effective hip replacement systems.

110.   Since 2007/2008, Defendants have had actual knowledge that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

111.   The fact that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery was, and is, a material fact.

112.   Defendants failed to disclose this material fact to consumers, including Plaintiffs and Class Members.  Instead, Defendants took affirmative steps to prevent physicians and consumers from learning of this material fact, while aggressively marketing the Pinnacle Devices as safe and effective hip replacement systems.  This concealment was done with the intent to induce Plaintiff to purchase the Pinnacle Devices so that their physicians could surgically implant the device into Plaintiff.

113.   In reliance on Defendants' fraudulent concealment of a material fact, Plaintiffs purchased the Pinnacle Devices so that their physicians could surgically implant the devices into Plaintiff.  Had Plaintiff known that the Pinnacle Devices

could fail early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, he would not have purchased or used the Pinnacle Device.

114.    As a result of Defendants' unlawful and fraudulent concealment of the effects of the Pinnacle Devices, the running statute of limitations has been suspended with respect to claims that Plaintiff has brought or could bring. Plaintiff had no knowledge of Defendants' unlawful conduct, or of any of the facts that might have led to the discovery of Defendants' wrongdoing, until shortly before this Complaint was filed when notice of the recall was sent.

115.    As a direct and proximate result of Defendants' fraudulent concealment of the effects of the Pinnacle Devices, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

116.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## TENTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION
### (Against All Defendants)

117.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

118.    Since at least 2007/2008, Defendants have had actual knowledge that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and

**Complaint for Damages**

suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

119. The fact that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery was, and is, a material fact.

120. Defendants knowingly and intentionally made false representations of material fact to Plaintiff, including but not limited to claims that the Pinnacle Devices were safe and effective hip replacement systems. For example, Defendants claimed that the device was based on a "strong clinical history", and that the devices would allow patients to "return to their more active lifestyles." Defendants also advertised that the Hip Implant Device is "[d]esigned for active lifestyles." They further asserted that the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology. Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability." They further touted that "[w]ith DePuy Advanced Bearing options, you can help your patients never stop moving." Defendants also indicated that "[l]arge diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery."

121. These representations were made with the intent to induce Plaintiff to obtain the Pinnacle Device.

122. In reliance on Defendants' misrepresentations of material fact, Plaintiff obtained the Pinnacle Device. Had Plaintiff known that the Pinnacle Device could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, he would not have elected to obtain a Pinnacle Device.

**Complaint for Damages**

123.   As a result of Defendants' intentional misrepresentations regarding the effects of the Pinnacle Device, the running statute of limitations has been suspended with respect to claims that Plaintiffs have brought or could bring. Plaintiff had no knowledge of Defendants' unlawful conduct, or of any of the facts that might have led to the discovery of Defendants' wrongdoing, until shortly before this Class Action Complaint was filed when notice of the recall was sent.

124.   As a direct and proximate result of Defendants' intentional misrepresentations, including but not limited to claims that the Pinnacle Device was safe for use, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

125.   In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

126.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

127.   Since at least 2007/2008, Defendants have had actual knowledge that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

128.   The fact that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery

to replace the device with the attendant risks of complications and death from such further surgery was, and is, a material fact.

129.    Defendants recklessly and/or negligently made false representations of material fact to Plaintiff, including but not limited to claims that the Pinnacle Devices were safe and effective hip replacement systems.  For example, Defendants claimed that the device was based on a "strong clinical history", and that the devices would allow patients to "return to their more active lifestyles." Defendants also advertised that the Hip Implant Device is "[d]esigned for active lifestyles."  They further asserted that the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology.  Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability."  They further touted that "[w]ith DePuy Advanced Bearing options, you can help your patients never stop moving." Defendants also indicated that "[l]arge diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery."

130.    These representations were made with the intent to induce Plaintiff to obtain the Pinnacle Device.

131.    In reliance on Defendants' misrepresentations of material fact, Plaintiff obtained the Pinnacle Device.  Had Plaintiff known that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, he would not have elected to obtain an Pinnacle Device.

132.    As a result of Defendants' reckless and/or negligent misrepresentations regarding the effects of the Pinnacle Devices, the running statute of limitations has been suspended with respect to claims that Plaintiffs have brought or could bring.  Plaintiff had no knowledge of Defendants' unlawful

conduct, or of any of the facts that might have lead to the discovery of Defendants' wrongdoing, until shortly before this Class Action Complaint was filed when notice of the recall was sent.

133.   As a direct and proximate result of Defendants' reckless and/or negligent misrepresentations, including but not limited to claims that the Pinnacle Devices was safe for use, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

134.   In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## TWELFTH CAUSE OF ACTION
## UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ*
### (Against All Defendants)

135.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

136.   California's Unfair Competition Law (UCL) creates a cause of action for those harmed by unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

137.   Defendants, and each of them, have made numerous misrepresentations to Plaintiff and the general public.  Among these misrepresentations are Defendants' claims that the Pinnacle Devices were safe and

effective hip replacement systems.  For example, Defendants claimed that the device was based on a "strong clinical history", and that the devices would allow patients to "return to their more active lifestyles."  Defendants also advertised that the Hip Implant Device is "[d]esigned for active lifestyles."  They further asserted that the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology.  Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability."  They further touted that "[w]ith DePuy Advanced Bearing options, you can help your patients never stop moving."  Defendants also indicated that "[l]arge diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery."

138.   Defendants have made numerous misleading omissions, including their failure to disclose to Plaintiff and the general public the results of research showing that that the Pinnacle Devices could fail early thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

139.   Defendants' business practices relating to the Pinnacle Devices are unlawful because they constitute, *inter alia*, false advertising, intentional misrepresentation and fraudulent concealment.  Indeed, Defendants were recently criticized in a warning letter by the FDA for not seeking approval before marketing a hip implant device for an unapproved use.

140.   As a direct and proximate result of Defendants' unlawful business practices and false advertising, Plaintiff has suffered significant damages, including but not limited to physical injury and actual loss of money or property, and will continue to suffer such damages in the future.

141.   Plaintiff seeks an order of this Court awarding damages, restitution, disgorgement, injunctive relief, attorneys' fees and costs, and all other relief allowed under California Business and Professions Code §17200, *et seq.*

## VI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.  Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

B.  Compensation for both economic and non-economic losses, including but not limited to medical expenses, loss of earnings, loss of consortium, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

C.  Punitive and/or exemplary damages in such amounts as may be proven at trial;

D.  Restitution and disgorgement of all revenue that Defendants have obtained through the manufacture, marketing, sale and administration of the Pinnacle Devices;

E.  Attorneys' fees and costs;

F.  Pre- and post-judgment interest; and

G.  Any and all further relief, both legal and equitable, that the Court may deem just and proper.

Dated:  April 25 , 2011

Dana B. Taschner

## <u>JURY DEMAND</u>

Plaintiff JAMES THOMPSON hereby demands a trial by jury.

_____

Dana B. Taschner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV11- 3513 MMM (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
DANA B. TASCHNER, SBN 135494
2049 Century Park East, Suite 1940
Los Angeles, CA 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JAMES THOMPSON , an individual

PLAINTIFF(S)

v.

DEPUY ORTHOPAEDICS, INC., an Indiana Corporation;
JOHNSON & JOHNSON SERVICES, INC., a New Jersey
Corporation; THOMAS SCHMALZRIED M.D., a California
Corporation; and DOES 1-10 , inclusive,    DEFENDANT(S).

CASE NUMBER

**CV11  03513 MMM** (FFMx)

**SUMMONS**

FAXED

TO:    DEFENDANT(S): DEPUY ORTHOPAEDICS, INC., an Indiana Corporation; JOHNSON & JOHNSON SERVICES, INC., a New Jersey Corporation; THOMAS SCHMALZRIED M.D., a California Corporation; and DOES 1-10 , inclusive,

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _____ Dana B. Taschner _____ , whose address is
_____ 2049 Century Park East, Suite 1940, Los Angeles, CA 90067 _____ . If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated:    APR 2 5 2011

By: _____

**CHRISTOPHER POWERS**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

---

CV-01A (12/07)                                    SUMMONS



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JAMES THOMPSON, an individual

**DEFENDANTS**
DEPUY ORTHOPAEDICS, INC., an Indiana Corporation; JOHNSON & JOHNSON SERVICES, INC., a New Jersey Corporation; THOMAS SCHMALZRIED M.D., a California Corporation; and DOES 1-100, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
DANA B. TASCHNER, SBN 135494
2049 Century Park East, Suite 1940
Los Angeles, CA 90067

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332 (a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☒ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☒ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV11   03513**

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Arizona |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Thomas Schmalzried - Los Angeles | Defendant DePuy Orthopaedics, Inc. - Indiana<br>Defendant Johnson & Johnson Services, Inc. - New Jersey |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _David R.____     Date _4/25/11_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)). |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 2 of 2